Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
Noel M. Hernandez
Nevada Bar No. 13893
noel.hernandez@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV  89135
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorneys for Defendant CarMax Auto Superstores, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RUBEN MAYA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br>CARMAX AUTO SUPERSTORES, INC. and DOES 1 through 50, inclusive,<br>Defendant. | Case No.: 2:24-cv-02388-GMN-NJK<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION, STAY PROCEEDINGS PENDING ARBITRATION, AND AWARD DEFENDANT'S ATTORNEY'S FEES/COSTS** |

Defendant CarMax Auto Superstores, Inc. ("Defendant"), by and through its undersigned counsel, hereby moves this Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, NRS Chapter 38, and the binding arbitration agreement signed by Plaintiff Ruben Maya ("Plaintiff") for an Order: (1) compelling this case into binding arbitration; (2) staying all proceedings in this case pending the outcome of binding arbitration; and (3) awarding Defendant attorney's fees and costs related to this Motion.

/ / /

/ / /

/ / /

/ / /

This Motion is made and based on the records, pleadings and papers on file herein, together with the following Memorandum of Point and Authorities, and any such argument the Court may deem appropriate.

DATED this 27th day of December, 2024.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

/s/ Noel M. Hernandez
Anthony L. Martin
Nevada Bar No. 8177
Noel M. Hernandez
Nevada Bar No. 13893
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV  89135
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorneys for Defendant CarMax Auto Superstores, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Ruben Maya ("Maya") and CarMax Auto Superstores, Inc. ("CarMax") entered into a valid arbitration agreement requiring Plaintiff to arbitrate all of his employment-related claims against CarMax. Numerous federal and state courts have found CarMax's arbitration agreement - the same one Plaintiff entered into with CarMax - to be valid and enforceable. *See Udesky v. CarMax Auto Superstores, Inc.*, Civil Case No. 2:22-cv-00546-RFB-EJY, United States District Court, District of Nevada (March 27, 2023); *Bendure v. CarMax Auto Superstores West Coast, Inc.*, Civil Case No. CIVSB2128683, Superior Court of California, County of San Bernardino (November 29, 2022); *Brittney Conley v. CarMax Auto Superstores California, LLC*, Civil Action No. 20STCV38359, Superior Court of California, County of Los Angeles (July 20, 2021); *Craig Weiss v. CarMax Auto Superstores California, LLC*, Civil Action No. SCV-36383 (November 29, 2017); *Sabanovich v. CarMax Auto Superstores Cal., LLC*, Stanislaus County Superior Court, Case No. 2027406 (May 15, 2018); *Daryl Mills v. CarMax*, Civil Action No. 3:15-cv-05018, ECF No. 25 (June 7, 2016); *CarMax Auto Superstores California, LLC v. Hernandez*, 94

F. Supp. 3d 1078 (2015); *Casas v. CarMax Auto Superstores California, LLC*, 224 Cal. App. 4th 1233 (2014); *Sanchez v. CarMax Auto Superstores California, LLC*, 224 Cal. App. 4th 398 (2014); *Herrera v. CarMax Auto Superstores, LLC*, No. CV-14-776-MWF (C.D. Cal. Jul. 2, 2014); *Luchini v. CarMax, Inc.*, No. CV F 12-0417 LJO DLB, 2012 WL 3862150 (E.D. Cal. Sept. 5, 2012); *Mahmoud v. CarMax Auto Superstores, Inc.*, No. 3:10CV421, 2011WL 32518 (W.D.N.C. Jan. 5, 2011).

This Court, in following with numerous other courts, should, pursuant to the Federal Arbitration Act [9 U.S.C. §§ 1, et seq.], enforce the parties' arbitration agreement and compel Plaintiff to arbitrate all of his claims arising from his employment with CarMax.

## II.    SUMMARY OF RELEVANT FACTS

### A.    CarMax Engages In Interstate Commerce.

CarMax is a national sales organization and, as a result, CarMax employees regularly engage in interstate transactions as part of their job duties. (See **Exhibit A**, Declaration of Karen Holt ["Holt Decl."], ¶ 8.) For example, the company, which is headquartered in Richmond, Virginia, currently has 230 sales locations across the country in forty-one (41) states, including Nevada. (*Id.*) CarMax makes its national sales inventory available to all customers, regardless of the location that they visit. (*Id.*) CarMax's sales inventory is sourced, in part, from used vehicles that CarMax purchases directly from customers. (*Id.*) Before a vehicle becomes part of CarMax's sales inventory, CarMax's "Automotive Technicians" carry out any necessary service or repair. (*Id.*) Among other duties, Automotive Technicians such as Plaintiff perform repairs and maintenance tasks on customers' vehicles and vehicles available for sale to CarMax customers. (*Id.*) Automotive Technicians repair, inspect, and diagnose problems with cars that are not just from local customers, but also vehicles in CarMax's national sales inventory that have been transported to their store from another CarMax facility that could be located in any state in which the company operates, often at a customer's request. (*Id.*) This may involve a variety of interstate interactions, since in many cases, that desired vehicle is located in another state than the customer. (*Id.*) For instance, as part of the sales process, a customer in Nevada might request a car that is at a store in Virginia; the car then gets transferred to Nevada and inspected and repaired prior to sale by

a Nevada Automotive Technicians. (*Id.*) Similarly, Automotive Technicians often must respond to inquiries about cars from employees at other CarMax locations that may be outside of Nevada and assist with arranging for transport of vehicles from their location to a location out of state, and vice versa. (*Id.*) Finally, many parts and equipment that Automotive Technicians use in their daily job activities have to be purchased or otherwise sourced from other states. (*Id.*)

### B. Plaintiff Entered Into An Arbitration Agreement With CarMax With Respect To All Claims Arising Out Of Employment.

Since at least 2003, CarMax has required, as a condition of employment, all applicants to consent to the DRA and its corresponding DRRP. (See Ex. A, Holt Decl., at ¶ 3.) Thus, at the time of Plaintiff's start of employment, Plaintiff executed the DRA and acknowledged that the DRA and applicable DRRP governed his employment (and termination thereof) with CarMax. (*See id.*, ¶¶ 6-7 & Ex. A-3, at p. 6.) Specifically, Plaintiff reviewed and signed the DRA on February 29, 2016. (*Id.*) The DRA provides that both Plaintiff *and* CarMax agree to arbitrate the majority of claims arising from Plaintiff's employment at CarMax. Specifically, the DRA that Plaintiff executed provides:

> Except as set forth below, and as more fully set forth in the CarMax Dispute Resolution Rules and Procedures, **both CarMax and I agree to settle** any and all previously unasserted claims, disputes, or **controversies arising out of or relating to** my application or candidacy for employment and **employment and/or cessation of employment with CarMax**, exclusively by final and binding arbitration before a neutral arbitrator.

(*Id.*, ¶ 7, Ex. A-3 at p. 6.)

Although Plaintiff and CarMax agreed that most claims would be submitted to arbitration, the DRA expressly provides that Plaintiff may exercise his rights pursuant to the National Labor Relations Act and file charges with the Equal Employment Opportunity Commission. (*Id.*) Likewise, Rule 2 of the DRRP excludes from arbitration claims brought pursuant to the National Labor Relations Act or for state employment insurance (*e.g.*, workers compensation, unemployment compensation, work disability compensation). (*See, e.g.*, Ex. A, Holt Decl., ¶ 6, Ex. A-2, at p. 3.)

In addition to the DRA, the DRRP, which defines the procedures governing arbitration between the parties, also compels Plaintiff to submit the instant action to arbitration. The most recent version of the DRRP, which is the version applicable to the claims in this action, has been in

effect since December 2022. (*Id.*, ¶ 6, Ex. A-2 at p. 2.) The currently applicable DRRP defines the scope and procedures for arbitration pursuant to the DRA between CarMax and Plaintiff. In particular, Rule 2 of the DRRP states in relevant part:

> Except as otherwise limited herein, **any and all employment-related legal disputes,** controversies or claims **arising out, or relating to,** an Associate's application or candidacy for employment (including any background check process), and **employment and/or cessation of employment or relationship with CarMax** or one of its affiliates, **any claims relating to wages, overtime, or other compensation;** working conditions; independent contractor or overtime exemption status; discrimination, harassment, or retaliation; civil penalties arising from any legal violations that an Associate has personally suffered; **breach of express or implied contract or fiduciary duty**; negligence or other tort; or violation of any federal, state, or local law, **shall be settled exclusively by final and binding arbitration** before a neutral Arbitrator selected in accordance with this Dispute Resolution Rules and Procedures. Arbitration shall apply to any and all such disputes, controversies, or claims, whether asserted against CarMax and/or against any employee, officer, alleged agent, director or affiliate company.

(*Id.*, ¶ 6, Ex. A-2, at p. 3 (emphasis added).)

Further, Rule 3 of the DRRP provides, in relevant part, that "[b]y agreeing to the Dispute Resolution Program, both CarMax and the Associate agree to resolve through arbitration all claims described in, or contemplated by, Rule 2." (*Id.* at p. 4.) The DRRP also provides that:

-The parties have until the applicable statute of limitations within which to file their claims (*Id.* [Rule 4(b)(i)]);

-The parties have a process for determining a neutral arbitrator from an established panel of arbitrators that permits them to "participate equally" in the selection of a neutral arbitrator through the National Arbitration and Mediation Service, the American Arbitration Association or as agreed upon by the parties (*Id.* at p. 5 [Rule 5]);

-The arbitration is conducted at the arbitrator's office within at least 50 miles from where each Plaintiff worked at CarMax, or at a mutually agreeable location (*Id.* at p. 6 [Rule 6(b)]);

-The parties must initially disclose all documents upon which they intend to rely in support of their positions in arbitration; in addition, each party is allowed 20 interrogatories (which may include document requests) and up to three depositions. The parties may also request for additional discovery from the arbitrator (*Id.* [Rule 8]);

-The arbitrator must provide a written award specifying appropriate remedies, if any (*Id.* at p. 9 [Rule 12]); and

-The DRA is enforceable pursuant to the FAA (*Id.* at p. 10 [Rule 17].)

In short, the DRA and the DRRP establish a fair, neutral, and proper arbitration regime for resolving claims related to Plaintiff's employment with CarMax. They are fully enforceable.

### C. Plaintiff's Claims Arise Out Of His Employment With CarMax And Are Covered By The DRA And DRRP.

On November 13, 2024, Plaintiff filed this lawsuit, despite agreeing to be bound by the terms of the DRA. (ECF No. 1.) All of Plaintiff's claims arise from his employment with CarMax. (*Id.*) Specifically, Plaintiff asserts the following claims for relief: (1) Failure to Pay Overtime in Violation of NRS 608.018; (2) Breach of Contract – Failure to Pay Accrued Unused Vacation Time; (3) Failure to Timely Pay All Wages Due at Termination in Violation of NRS 608.020 et seq.; and (4) Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207. (*Id.*) As these claims fall squarely within the scope of the parties' DRA, and as Plaintiff unequivocally agreed to the DRA, this matter must be submitted to binding arbitration.

On December 13, 2024, CarMax advised Plaintiff's counsel in writing of the signed agreement to submit claims arising out of his employment to binding arbitration and provided Plaintiff's counsel a copy of Plaintiff's executed DRA, the applicable DRRP, and advised of the various state and federal courts that have upheld its DRA and DRRP. (See **Exhibit B**, Declaration of Noel M. Hernandez ["Hernandez Decl."], ¶ 2; Ex. B-1.) On December 19, 2024, CarMax again reached out to Plaintiff's counsel to inquire whether Plaintiff had a chance to review the agreement and whether he was willing to stipulate to arbitration. (*Id.*, ¶ 3, Ex. B-2).

Despite the weight of authority holding the DRA and DRRP enforceable, Plaintiff's counsel responded on December 19, 2024 and, unfortunately, was not agreeable to arbitration. Plaintiff's counsel repeatedly failed to provide any reasonable justification for their refusal to stipulate to arbitration despite CarMax's attempts to reach a resolution. (*Id.*, ¶¶ 4 & 6, Ex. B-3 & B-5.) However, despite their refusal, Plaintiff's claims still must be submitted to binding arbitration.

### III. LEGAL ARGUMENT

### A. The Federal Arbitration Act And Nevada's Uniform Arbitration Act Require Plaintiff To Arbitrate His Claims.

Plaintiff's employment with CarMax, out of which arose the agreement to arbitrate the claims in this case, has a sufficient nexus with interstate commerce to fall under the FAA. The requirement is minimal. *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273 (1995) (broadly interpreting the phrase "involving commerce" in 9 U.S.C. § 2 as the functional

equivalent of "affecting" commerce). In examining an employment arbitration agreement, the U.S. Supreme Court confirmed that the FAA's language requiring enforcement of arbitration agreements involving interstate commerce showed congressional intent to exercise its authority to regulate commerce to the fullest extent and, therefore, to cover all employment agreements not specifically exempted. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). In the instant case, there is ample interstate commerce activity present to meet the standard outlined in *Allied-Bruce* and reinforced in *Circuit City Stores*, as CarMax is a national sales organization with a national sales inventory that moves across state lines and thus CarMax employees, including Plaintiff, regularly engage in activities involving goods moving in interstate commerce. (See Ex. A, Holt Decl., ¶ 8.) This "evidence . . . suffices to demonstrate that [Plaintiff's employment] with CarMax 'involv[ed] [interstate] commerce.'" *Hernandez*, 94 F. Supp. 3d at 1101; *see also Allied-Bruce*, 513 U.S. at 282 (concluding that a relationship involved interstate commerce where, *inter alia*, the defendant was a national corporation that was engaged in business in multiple states).

The FAA and Nevada's Uniform Arbitration Act, codified at Chapter 38 of Nevada's Revised Statutes ("UAA"), require courts to compel arbitration of any controversy covered by the terms of a valid written agreement to arbitrate. As explained by the Supreme Court in *Dean Witter Reynolds*, *Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis added):

> The [Federal] Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. **By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.**

Indeed, the Ninth Circuit has explained as follows: "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Inlandboatsmen Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1078 (9th Cir. 2002), overruled on other grounds by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (citations omitted); *Andrus v. D.R. Horton, Inc.*, 2012 U.S. Dist. LEXIS 76177, at *7 (D.

Nev. June 1, 2012).

Section 38.219 of the UAA is virtually identical: "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except as otherwise provided in NRS 597.995 or upon a ground that exists at law or in equity for the revocation of a contract." NRS 597.995 requires a "specific authorization for the provision which indicates that the person has affirmatively agreed to the provision."

The Supreme Court has made clear that the FAA mandates enforcement of arbitration agreements in employment cases. In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), for example, the court reaffirmed the enforceability of arbitration agreements covering employment-related claims. The *Circuit City* Court's holding was unequivocal: "[t]he Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law . . . ." *Circuit City*, 532 U.S. at 123. More to the point, the *Circuit City* Court stated: "[w]e have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context." *Id.* Writing for the majority, Justice Kennedy went on to enumerate the many benefits of arbitration in the employment context. *Id.* (discussing reduced expenses for the parties and avoidance of conflict of laws issues); *see also, Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (recognizing arbitration as a legitimate method of resolving employment disputes).

In Nevada, the Federal District Courts have confirmed that there is a "strong public policy [that] favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation," and arbitration clauses are generally enforceable. *L&M Creations, Inc. v. CRC Information Systems*, 2011 U.S. Dist. LEXIS 36269, at *5 (D. Nev. March 23, 2011) (citing *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004)). Indeed, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *See Clark County Public Employees Assoc. v. Pearson*, 798 P.2d 136, 138 (Nev. 1990) (quoting *Int'l Assoc. Firefighters v. City of Las Vegas*, 764 P.2d 478, 480 (Nev. 1988)). There is a presumption in favor of arbitration, and where, as here, there is a broadly worded arbitration agreement, "only the most forceful evidence of a purpose to exclude [a] claim from arbitration" will countenance against an order to arbitrate. *Id.* (quoting *AT&T Technologies v. Communications Workers of America*, 475 U.S. 643, 650 (1986)).

Plaintiff's claims are unquestionably subject to arbitration. They arise out of or relate to his employment and/or cessation of employment with CarMax. Plaintiff's claims are: (1) Failure to Pay Overtime in Violation of NRS 608.018; (2) Breach of Contract – Failure to Pay Accrued Unused Vacation Time; (3) Failure to Timely Pay All Wages Due at Termination in Violation of NRS 608.020 et seq; and (4) Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207. (ECF No. 1.)

The DRA states that it applies to "claims under federal, state and local statutory or common law, such as . . . the law of contract and the law of tort." (Ex. A-2 at p. 6). Plaintiff's first, third, and fourth claims expressly invoke statutory law, and Plaintiff's second claim invokes the law of contracts related to actions arising from Plaintiff's employment and termination thereof.

Thus, (i) Plaintiff agreed to abide by the terms of the DRA and the DRRP; (ii) the DRA and the DRRP encompass arbitration of any claims arising from Plaintiff's employment with CarMax; and (iii) Plaintiff's present claims for relief against CarMax fall within the scope of the arbitration provision in the DRA and the DRRP.

**B.   All Proceedings Related To Plaintiff's Claims Should Be Stayed While The Motion To Compel Is Pending.**

The Ninth Circuit has held that, under the FAA, once a court is presented with a motion to compel arbitration, the court's jurisdiction is limited to making a determination about the arbitrability of the underlying dispute. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999). Under the FAA, discovery is permitted, if at all, only regarding "issues relating to the making and performance of the agreement to arbitrate." *See id.*; *Andrus*, 2012 U.S. Dist. LEXIS 76177, at *3. Simply put, discovery on the underlying merits of a claim is not appropriate or permissible while a motion to compel arbitration is pending.

Any attempt to conduct merit-based discovery before a determination on the issue of arbitrability is resolved "puts the cart before the horse." *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002); *Klepper v. SLI, Inc.*, 45 Fed. Appx. 136, 139 (3d. Cir. 2002). Either or both parties, as well as the Court, should not be required to spend time and resources conducting discovery which may ultimately be the responsibility of an arbitrator and potentially not within the scope of the arbitration. *See Miceli v. Citigroup, Inc.*, 2016 U.S. Dist. LEXIS 38708, at *2 (D. Nev. Mar. 22, 2016) (citing *Mundi v. Union Sec. Life Ins. Co.*, 2007 U.S. Dist. LEXIS 64012, at *6 (E.D. Cal. Aug. 15, 2007)). Indeed, the Ninth Circuit has held that if a party is required to proceed with discovery while the enforceability of an arbitration agreement is

still being litigated, "the advantages of arbitration – speed and economy – are lost forever" and that such a loss is serious and irreparable. *Winig v. Cingular Wireless*, 2006 U.S. Dist. LEXIS 83116, at *2 (N.D. Cal. Nov. 6, 2006) (quoting *Alascom, Inc. v. ITTN Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984)).

Federal court, including courts in this jurisdiction and circuit, regularly stay discovery and other pre-trial obligations pending a decision on a party's motion to compel arbitration. *See, e.g., Miceli*, 2016 U.S. Dist. LEXIS 38708, at *2 (issuing stay of discovery pending hearing on defendant's motion to compel arbitration); *Andrus*, 2012 U.S. Dist. LEXIS 76177, at *4 (same); *Steiner v. Apple Computer, Inc.*, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007) (a stay of initial scheduling obligations and discovery pending determination of motion to compel is prudent because, "[i]f a dispute is arbitrable, responsibility for the conduct of discovery lies with the arbitrators," not the court.); *Coneff v. AT&T Corp.*, 2007 U.S. Dist. LEXIS 20502, at *3 (W.D. Wash. Mar. 9, 2007) (staying all discovery on the merits until decision on motion to compel arbitration issued); *Merrill Lynch, Inc. v. Coors*, 357 F. Supp. 2d 1277, 1280 (D. Colo. 2004) (issuing stay of discovery on merits pending district court's decision on motion to compel in interests of judicial economy, noting that resolution of motion may dispose of action entirely); *Cunningham v. Van Ru Credit Corp.*, 2006 U.S. Dist. LEXIS 49844, at *3 (E.D. Mich. July 21, 2006) (same); *see also Mundi*, 2007 U.S. Dist. LEXIS 64012, at *5 (staying discovery pending interlocutory appeal of district court's decision to deny motion to compel arbitration); *Winig*, 2006 U.S. Dist. LEXIS 83116, at *2 (holding that stay of discovery pending appeal was necessary to prevent irreparable harm to defendant – the loss of speed and economy associated with arbitration); *Alasacom v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (same).

Notwithstanding the long line of case law expressly instructing that a stay of proceedings is appropriate here, the Court also has inherent authority to stay discovery "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When such a stay is requested, courts must weigh "the competing interests which will be affected by the granting or refusal to grant a stay . . . Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice . . . ." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

As discussed above, the Ninth Circuit has expressly held that requiring a party to go forward with merit discovery while the issue of arbitration is still being litigated can result in

"serious" and "irreparable" damage – *i.e.*, the loss of the benefits of arbitration. *See Winig*, 2006 U.S. Dist. LEXIS 83116, at *2 (citations and quotations omitted); *Steiner*, 2007 WL 4219388, at *1. A brief stay will also promote judicial economy. For example, if the parties proceed with litigation and the court subsequently grants Defendant's Motion, both sides will have lost the benefits traditionally associated with arbitration. *See Winig*, 2006 U.S. Dist. LEXIS 83116, at *2; *Merrill Lynch, Inc.*, 357 F. Supp. 2d at 1280 (quoting *Klepper v. SLI, Inc.*, 45 Fed. Appx. 136, 139 (3d Cir. 2002) ("requiring the parties to submit to full discovery [prior to a ruling on the arbitrability issue] may unnecessarily subject them to the very complexities, inconveniences and litigation that they determined to avoid.").

At this time, there is no indication that any harm, let alone serious or irreparable harm, would result from a brief stay pending the Court's determination on this Motion. At worst, discovery may commence a few weeks or months later, but discovery undoubtedly will be had.

### C.   The Court Has Authority To Award Attorney's Fees And Costs.

When a party acts in bad faith or in a vexatious, wanton, or oppressive manner, this Court has the authority to assess attorneys' fees pursuant to 28 U.S.C. § 1927 and/or through its own inherent power. *See Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1558–61 (D. Nev. 1997) (internal citations omitted); *Hubbard v. Yardage Town, Inc.*, 2005 2005 U.S. Dist. LEXIS 40404, *10 (S.D. Cal. Dec. 2, 2005). A frivolous or bad faith refusal to abide by an enforceable agreement is considered sanctionable conduct.  *See United Food & Commercial Workers Union, Locals 197 v. Alpha Beta Co.*, 736 F.2d 1371, 1382–83 (9th Cir. 1984); *Road Sprinkler Fitters Local Union No. 669 v. Cosco Fire Protection, Inc.*, 363 F. Supp. 2d 1220, 1226 (C.D. Cal. 2005) (deciding attorneys' fees are warranted when a party frivolously or in bad faith refuses to submit a dispute to arbitration).

In this matter, Plaintiff is bound by the DRA that requires him to enter arbitration to resolve all claims, regardless of whether they arose out of his employment or termination. (Ex. A, Holt Decl., ¶ 6, Ex A-3 at p. 5.) Plaintiff subsequently refused to abide by the terms of this DRA by filing a lawsuit. When CarMax asked Plaintiff to stipulate to arbitration, Plaintiff refused to do so. (Ex. B, Hernandez Decl., ¶ 4, Ex. B-3.)

Had Plaintiff acted in good faith by complying with the terms of his DRA, or at least expressing a plausible legal basis for his refusal to do so, CarMax would not have to incur the needless time and expense related to this Motion. As a result of Plaintiff's vexatious conduct, an

award of attorney's fees is appropriate.[1]

## IV. CONCLUSION

For the above-stated reasons, Defendant respectfully requests that this Motion be granted, that Plaintiff's claims be immediately compelled into individual, binding arbitration, and that all proceedings should be stayed while the Motion is pending before this Court. Further, Defendant respectfully requests that Defendant's attorney's fees and costs be awarded in relation to this Motion.

DATED this 27th day of December, 2024.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Noel M. Hernandez*
Anthony L. Martin
Nevada Bar No. 8177
Noel M. Hernandez
Nevada Bar No. 13893
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV  89135
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorneys for Defendant CarMax Auto Superstores, Inc.*

---

[1] If the Court grants CarMax's Motion and awards fees, CarMax will submit a declaration in support of an award of fees, which will itemize the moving attorneys' time and rates, as well as the costs associated with preparing and filing this Motion.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the foregoing **DEFENDANT'S MOTION TO COMPEL ARBITRATION, STAY PROCEEDINGS PENDING ARBITRATION, AND AWARD DEFENDANT'S ATTORNEY'S FEES/COSTS** to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing, to the following registrant:

> Jason Kuller
> Rachel Mariner

Pursuant to NRCP 5(b), I hereby further certify that service of the foregoing was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

Jason Kuller
Rachel Mariner
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89128

*Attorneys for Plaintiff*

DATED this 27th day of December, 2024.

/s/ Vincent M. Risucci
AN EMPLOYEE OF OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.