# EXHIBIT A

# DECLARATION OF KAREN HOLT

Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
Noel M. Hernandez
Nevada Bar No. 13893
noel.hernandez@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800
Fax: 702.369.6888

*Attorneys for Defendant CarMax Auto Superstores, Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RUBEN MAYA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARMAX AUTO SUPERSTORES, INC. and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 2:24-cv-02388-GMN-NJK<br><br>**DECLARATION OF KAREN HOLT IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AS TO PLAINTIFF RUBEN MAYA'S CLAIMS** |

I, Karen Holt, declare as follows:

1. I am employed with CarMax Auto Superstores Services, Inc. ("CarMax") as a Regional Vice President of Human Resources. I have held this position since March of 2021. Previously, starting in October of 2014, I held the position of Divisional Human Resources Director, and have held a variety of positions with CarMax since first starting with the company in March of 2004. I am familiar with the Human Resources policies and procedures of CarMax entities. I have personal knowledge of CarMax's employee dispute resolution programs and CarMax's practices regarding maintaining custody of program documents. I also have knowledge of the job duties of CarMax's Automotive Technicians and other non-exempt employees and know how these employees generally perform their jobs. I also have general knowledge of CarMax

- 1 -

business operations. Based upon my personal experience, as well as reviewing CarMax business records, I have personal knowledge of the matters contained herein, and if called, I would and could testify competently thereto.

2. I am aware of the legal action filed by Plaintiff Ruben Maya ("Plaintiff") against CarMax, entitled *Ruben Maya v. CarMax Auto Superstores, Inc*., case no. 2:24-cv-02388, in the U.S. District Court, District of Nevada.

3. Since at least 1999, CarMax has implemented a Dispute Resolution Program for its employees to cover certain employment-related disputes between CarMax and its employees, including its Automotive Technicians and other non-exempt employees. Since at least 1999, CarMax has implemented Dispute Resolution Rules and Procedures ("DRRP") to govern its dispute resolution programs for its employees. Since at least 2003, CarMax has required all applicants to consent to the Dispute Resolution Agreement ("DRA") and the DRRP as a condition of employment. CarMax has established systems to preclude an applicant from completing the CarMax Application or submitting an application to CarMax if the applicant does not consent to the DRA and DRRP. The DRRP are, pursuant to CarMax policy and procedure, provided to all applicants for employment at CarMax entities.

4. The DRRP adopted in 2002 and all subsequent DRRP versions contain a modification clause that provides the method for CarMax to modify the DRRP. The modification clauses all provide that CarMax may modify the DRRP on December 31 of any year upon giving thirty (30) calendar days written notice to employees. The modification clauses further provide that Notice may be given by posting a written notice by December 1 of each year at CarMax locations.

5. When modifying the terms of the DRRP, CarMax notifies its employees in two ways. First, CarMax posts notice of the changes to the arbitration program at CarMax stores in the same area as other employee notifications and postings. Second, as indicated in said notice, employees may obtain the text of the modified DRRP by requesting a copy of the modified DRRP from Human Resources or by examining the applicant packet which is kept at their local CarMax store. Additionally, CarMax associates have access to the DRRP on CarMax's intranet system. To

my knowledge, at no time did Plaintiff request copies of any version of the DRRP.

6. At the time that Plaintiff applied for employment with CarMax on February 22, 2016, and began working for CarMax on May 23, 2016 as an Automotive Technician, the version of the DRRP that was in effect was dated December 2014 (the "2014 DRRP"); a true and correct copy is attached as **Exhibit A-1**. Since December 31, 2022, CarMax has utilized an updated version of the DRRP effective as of that date (the "2022 DRRP"), a true and correct copy of which is attached as **Exhibit A-2**. As stated in each version of the DRRP, in general, the version of the DRRP in effect as of the time the applicable claims arose or accrued is the version that will apply to arbitration of those claims. The 2022 DRRP are the current DRRP in effect, and these are the rules applicable to the instant action brought by Plaintiff.

7. In my capacity as the Regional Vice President of Human Resources, I am also the custodian of CarMax's personnel records. Attached hereto as **Exhibit A-3** is a true and correct copy of Plaintiff's Employment Application that is contained in CarMax's personnel records, including the CarMax Dispute Resolution Agreement ("DRA") signed by Plaintiff on February 29, 2016.

8. CarMax is a national sales organization. As a result, CarMax employees often engage in interstate transactions as part of their job duties. For example, the company, which is headquartered in Richmond, Virginia, currently has a total of 230 sales locations across the country in a total of forty-one (41) states (including Nevada). CarMax makes its national sales inventory available to all customers, regardless of the location that they visit. CarMax's sales inventory is sourced, in part, from used vehicles that CarMax purchases directly from customers. Before a vehicle becomes part of CarMax's sales inventory, CarMax's "Automotive Technicians" carry out any necessary service or repair. Among other duties, Automotive Technicians such as Plaintiff perform repairs and maintenance tasks on customers' vehicles and vehicles available for sale to CarMax customers. Automotive Technicians repair, inspect, and diagnose problems with cars that are not just from local customers, but also vehicles in CarMax's national sales inventory that have been transported to their store from another CarMax facility that could be located in any state in which the company operates, often at a customer's request. This may involve a variety of interstate

interactions, since in many cases, that desired vehicle is located in another state than the customer. Similarly, Automotive Technicians often must respond to inquiries about cars from employees at other CarMax locations that may be outside of Nevada and assist with arranging for transport of vehicles from their location to a location out of state, and vice versa. Finally, many parts and equipment that Automotive Technicians use in their daily job activities must be purchased or otherwise sourced from other states.

Executed on this 27th day of December, 2024, in Richmond, Virginia. I declare under penalty of perjury under the laws of the United States of America, the Commonwealth of Virginia, and the Commonwealth of Pennsylvania that the foregoing is true and correct.

*/s/ Karen Holt*_____

Karen Holt