Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
Noel M. Hernandez
Nevada Bar No. 13893
noel.hernandez@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV  89135
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorneys for Defendant CarMax Auto Superstores, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RUBEN MAYA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARMAX AUTO SUPERSTORES, INC. and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.:  2:24-cv-02388-GMN-NJK<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, STAY PROCEEDINGS PENDING ARBITRATION, AND AWARD DEFENDANT'S ATTORNEY'S FEES/COSTS** |

Defendant CarMax Auto Superstores, Inc. ("Defendant" and/or "CarMax"), by and through its attorneys of record, hereby files its Reply in Support of its Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and Award Defendant's Attorney's Fees/Costs. (ECF No. 6.)

This Reply is based on the records, pleadings and papers on file herein, together with the following Memorandum of Points and Authorities, the Declaration of Noel M. Hernandez, attached hereto as **Exhibit A**, and any such further argument as the Court may deem appropriate.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Court's role in adjudicating the Motion to Compel Arbitration and Stay Proceedings ("Motion") is straightforward: (1) determine whether valid agreements to arbitrate exist; and, if

they do, (2) confirm that the scope encompasses all of Plaintiff's claims. If the Court answers yes to both questions, it must order the parties to arbitration. Here, Plaintiff admits to signing a Dispute Resolution Agreement ("DRA") requiring him to arbitrate his claims. Trying to run from this reality, Plaintiff claims he did not receive CarMax's Dispute Resolution Rules and Procedures ("DRRP"), even though he acknowledged that he received the DRRP when he signed the DRA nearly nine (9) years ago. Even if true, that does not make the DRA unenforceable. Knowing the weight of authority is against him, Plaintiff misconstrues case law and cites to secondary sources in a disingenuous attempt evade arbitration. Further, Plaintiff attacks the 2014 DRRP. However, CarMax modified and replaced the 2014 DRRP years ago with the 2022 version of the DRRP. Only the 2022 DRRP applies to Plaintiff's claims.

Before filing its Motion, CarMax repeatedly asked Plaintiff for the basis for his refusal to agree to arbitration. Plaintiff refused to provide any meaningful response and instead sent demeaning emails implying that CarMax should read Plaintiff's mind to know the basis for his refusal. In his Opposition, Plaintiff cites no binding authority for his erroneous refusal and wastes the Court's and CarMax's time and resources. Attorneys' fees should be awarded.

## II.  LEGAL ARGUMENT

Despite Plaintiff's bizarre narrative that arbitration agreements leads to wage theft, for which he merely cites secondary non-binding and non-persuasive authorities, this Court, consistent with Nevada law, holds that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Williford v. Covenant Care Vegas, Inc.*, No. 2:21-CV-2203-GMN-NJK, 2022 WL 16527720, *2 (D. Nev. Oct. 28, 2022).

Parties "may not use artful pleading to avoid arbitration." *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 801 (Nev. 2022). Nevada law "resolve[s] all doubts concerning arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Ass'n of Firefighters, Loc. No. 1285 v. City of Las Vegas*, 104 Nev. 615, 618 (1988).

/ / /

/ / /

A. **Plaintiff Concedes that the DRA is Not Unconscionable and That Both the DRA and DRRP Encompass His Claims**

In his Opposition, Plaintiff does not dispute, because he cannot, that the DRA is enforceable and does not attempt to argue that any of the provisions in the DRA are unconscionable. Further, Plaintiff does not dispute that the DRA and DRRP cover all claims in this action. Accordingly, CarMax's Motion should be granted.

B. **The DRA and DRRP are Valid and Enforceable**

The Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Williford*, 2022 WL 16527720, *2. In Nevada, an arbitration agreement may only be invalidated for unconscionability where both procedural and substantive unconscionability are present. *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 552 (2004), *overruled on other grounds by U.S. Home Corp. v. M. Ballesteros Tr.*, 134 Nev. 180, 191 (2018).

1. **The DRA and 2022 DRRP Are Not Procedurally Unconscionable**

Plaintiff does not dispute that on February 29, 2016, he executed the DRA. Nor does he contend that the DRA is unconscionable. Instead, Plaintiff incorrectly asserts that the DRRP[1] is unenforceable because he did not receive it and thus, there was no meeting of the minds. This argument has been rejected by the Nevada Supreme Court and contradicts the documentary evidence. When a document is incorporated into a contract by reference, it is as though its terms are set forth in the contract and both are interpreted as a single document. *Nat'l Football League v. Gruden* ("NFL"), 548 P.3d 775, 2024 WL 2178990 *2 (Nev. May 14, 2024); *Gonzales v. Sitel Operation Corporation,* No. 2:19-cv-00876-GMN-VCF, 2020 WL 96900, *3 (D. Nev. Jan. 7, 2020); *Jaffey v. Del Taco Restaurants, Inc.*, 2018 WL 3997261, *2 (D. Nev. Aug. 21, 2018);

---

[1] Plaintiff's Opposition attacks portions of the 2014 DRRP; however, CarMax modified and replaced the 2014 DRRP and implemented a new DRRP dated December 31, 2022. (ECF No. 6-4, 2022 DRRP.) When modifying terms of the DRRP, CarMax notifies its employees by posting a notice of the changes to the arbitration agreement program at CarMax stores in the same area as other employee notifications and postings. (ECF No. 6-2, Holt Decl., ¶ 5.) Employees may also obtain the text of the modified DRRP by requesting a copy of the modified DRRP from Human Resources or by examining the applicant packet which is kept at their local CarMax store. (*Id.*) Employees may also log into their intranet system to obtain a copy. (*Id.*) Plaintiff filed his lawsuit on November 13, 2024. (ECF No. 1-2; Complaint.) Accordingly, the 2022 DRRP applies.

*Sheehan v. Sparks Black Bear, LLC*, 2019 WL 591445 (D. Nev. Feb. 13, 2019). In *Sheehan,* the Court rejected this same argument and held that including a copy of the arbitration rules cited to in the arbitration agreement would not have aided Plaintiff's understanding of an already simple and clear arbitration agreement. *Sheehan,* 2019 WL 591445, *3.

Here, the DRA is a two-page standalone agreement that contains a clear heading labeled "CARMAX DISPUTE RESOLUTION AGREEMENT." The DRA expressly states "**Included with this application is the CarMax [DRRP]. You should familiarize yourself with these rules and procedures prior to signing the Agreement. If the Rules and Procedures are not included with this application you must request a copy from a CarMax representative prior to signing the Agreement.**" (ECF No. 14-2; ¶ 14–15, Ex. D). The DRA further states "**I have read this Agreement and the [DRRP] before submitting this Application and before accepting an offer of employment with CarMax**." (*Id.*) In *Herrera v. CarMax Auto Superstores California, LLC*, 2014 WL 3398363, *6 (C.D. Cal. Jul. 2, 2014), the court held:

> "As to whether Plaintiffs were 'provided with the Defendant's DRRP', the Agreements provide that if the DRRP is not with the application packet, the application should request the DRRP from a CarMax representative. Moreover, Plaintiffs signed under the Agreements' bold text specifically acknowledging that they had received the DRRP."

Here, the DRRP is incorporated into the DRA by reference and Plaintiff acknowledged that he did receive and read the DRRP before signing the DRA. There is a clear meeting of the minds.[2] When someone has the ability to read the underlying policy but chooses not to, as here, they "cannot now claim surprise at its contents." *NFL*, 2024 WL 2178990 *11.

Plaintiff also argues that courts have found the DRRP unconscionable. However, the opposite is true. Every court that has analyzed the DRA and DRRP have held that they are enforceable and ordered the matters to arbitration.[3] Further, Plaintiff's argument that he was forced

---

[2] *Smith v. Kellogg Co.*, 2018 U.S. Dist. LEXIS 24744, *9 (D. Nev. 2018) (finding that the plaintiff did not lack a "meaningful choice" where the plaintiff signed an agreement with a provision in which they acknowledged they were advised to consult with an attorney and was given time to consider the agreement before signing, as well as time to rescind after signing).

to sign the DRA under "pre-hiring circumstances" and "significant oppression" is without merit. (ECF No. 14, p. 2:2-3.) This Court, consistent with Nevada law, holds that arbitration agreements presented as a take-it-or-leave-it as part of the on-boarding process are valid and enforceable. *Williford*, 2022 WL 16527720 *5; *FQ Men's Club, Inc. v. Doe Dancers I*, 136 Nev. 809 (2020); *Kindred v. Second Judicial Dist. Court,* 116 Nev. 405, 411 (2000) (holding that the Nevada Supreme Court has never applied the adhesion contract doctrine to employment cases and that "[p]arties to a written arbitration agreement are bound by its conditions regardless of their subjective beliefs at the time the agreement was executed."); *see also Campanelli v. Conservas Altamira, S.A.,* 86 Nev. 838, 841 (1970)).

Further, it is clear from the DRA that Plaintiff was not forced to sign the agreement in that moment, or even that day. (ECF No. 14-2; ¶ 14–15, Ex. D.) He was instructed that he could take the package and return it later and had three days to withdraw his consent. (*Id.*) Plaintiff was under no pressure by CarMax to sign the DRA. (*Id.*) Any pressure he allegedly felt was self-imposed due to his own constraints and in no way caused by CarMax. Moreover, as analyzed above, any alleged failure to attach the rules does not establish procedural unconscionability when, as here, the rules are readily available, the employee is informed of how to obtain them, and they are not inherently unfair. *Gonzales*, 2020 WL 96900 *3; *Jaffey*, 2018 WL 3997261, *2 (finding plaintiff's contentions

---

[3] *Udesky v. CarMax Auto Superstores, Inc.*, Civil Case No. 2:22-cv-00546-RFB-EJY, United States District Court, District of Nevada (March 27, 2023) (Nevada District Court granting motion to compel arbitration and stay proceedings); *Bendure v. CarMax Auto Superstores West Coast, Inc.*, Civil Case No. CIVSB2128683, Superior Court of California, County of San Bernardino (November 29, 2022) (Court granting motion to compel arbitration and stay proceedings); *Brittney Conley v. CarMax Auto Superstores California, LLC*, Civil Action No. 20STCV38359, Superior Court of California, County of Los Angeles (July 20, 2021) (Court granting motion to compel arbitration and finding the DRA and DRRP are not unconscionable); *Craig Weiss v. CarMax Auto Superstores California, LLC*, Civil Action No. SCV-36383 (November 29, 2017) (Court granting motion to compel arbitration); *Sabanovich v. CarMax Auto Superstores Cal., LLC*, Stanislaus County Superior Court, Case No. 2027406 (May 15, 2018) (Court enforcing DRA and DRRP and compelling parties to arbitration); *Daryl Mills v. CarMax*, Civil Action No. 3:15- cv-05018, ECF No. 25 (June 7, 2016) (U.S. District Court compelling parties to arbitration); *CarMax Auto Superstores California, LLC v. Hernandez*, 94 F. Supp. 3d 1078 (2015) (District Court finding granting motion to compel arbitration); *Casas v. CarMax Auto Superstores California, LLC*, 224 Cal. App. 4th 1233 (2014) (Court finding the DRA and DRRP enforceable and granting motion to compel arbitration); *Sanchez v. CarMax Auto Superstores California, LLC*, 224 Cal. App. 4th 398 (2014) (Court enforcing the DRA and DRRP and compelling the parties to arbitration); *Herrera v. CarMax Auto Superstores, LLC*, No. CV-14-776-MWF (C.D. Cal. Jul. 2, 2014) (Court finding the DRRP and DRA as binding and enforceable and compelling the parties to arbitration); *Luchini v. CarMax, Inc.*, No. CV F 12-0417 LJO DLB, 2012 WL 3862150 (E.D. Cal. Sept. 5, 2012) (Court enforcing the DRA and DRRP and ordering arbitration); *Mahmoud v. CarMax Auto Superstores, Inc.*, No. 3:10CV421, 2011WL 32518 (W.D.N.C. Jan. 5, 2011) (Court finding no unconscionability in the DRA and DRRP and compelling arbitration).

that he had no recollection of reviewing an arbitration agreement was sufficiently refuted by the defendant's evidence proving he had access to the contract). Accordingly, the alleged failure to attach the arbitration rules does not, in and of itself, constitute procedural unconscionability.[4]

Plaintiff's reliance on *Ronderos, Metter, and FQ Men's Club, Inc.* is misguided as they are legally and factually distinguishable from this case. *Ronderos* was decided under California law, which is not applicable here. *Williford*, 2022 WL 16527720 *4, fn. 3 (determining California law is inapplicable when deciding whether an arbitration agreement is procedurally unconscionable). Further, in *Ronderos,* the employer required the plaintiff to sign a document titled "Candidate's Statement," which had the arbitration agreement within. *Ronderos v. USD Reddaway,* 114 F.4th, 1087. Then, the employer "pushed" the employee to sign the document "immediately, on site." *Id.* Here, CarMax presented documents expressly titled "CARMAX'S DISPUTE RESOLUTION AGREEMENT" ("DRA") and "DISPUTE RESOLUTION RULES AND PROCEDURES" ("DRRP") to Plaintiff during the hiring process and gave Plaintiff ample opportunity to review and evaluate both agreements. (ECF No. 14-2; ¶ 14–15, Exs. D, E.) Accordingly, the DRA and DRRP were clear and conspicuous. Further, the DRA expressly allowed Plaintiff to take the package with him and return it signed, and allowed him three days to rescind the agreement *after* signing. *(Id.)*

*Metter* was also decided under California law, and as such, is not applicable. *Williford*, 2022 WL 16527720 *4, fn. 3. In *Metter,* a pop-up keypad enabling the Uber rider to enter his credit card information blocked the terms of service alert that included Uber's arbitration agreement. *Metter v. Uber Technologies, Inc.,* 2017 WL 137459, *3 (N.D. Cal. April 17, 2017). Here, Plaintiff admits to receiving and signing the DRA, which states he reviewed the DRRP.

In *FQ Men's Club*, the Court found the arbitration agreement was procedurally unconscionable because the employer surprised the plaintiffs with the arbitration agreement as they arrived for their routine shift; the plaintiffs were forced to sign the documents in a dimly lit and noisy entryway as front door hostesses, customers, and other dancers engaged in club business around them which was unconducive to concentration and imposed a time constraint; and the

---

[4] Plaintiff alleges that the 2014 DRRP was blurry and "nearly unintelligible." A cursory glance shows that while the text was slightly blurry, it was certainly not unreadable.

owner of the Men's Club prohibited the employees both from removing the documents from the Men's Club to review and from working pursuant to their existing contractual agreement until they signed the documents. *FQ Men's Club*, 136 Nev. 809. None of these circumstances are present here. Thus, there is no basis to conclude that either the DRA or DRRP are procedurally unconscionable. There was no fine print, or complicated or misleading language in the DRRP and Plaintiff admits to signing the DRA which expressly stated that he was agreeing to enter arbitration by signing. (ECF No. 6-4, 2022 DRRP; ECF No. 14-2; ¶ 14–15, Ex. D.) There is no procedural unconscionability.

### 2. Plaintiff Did Not Meet His Burden of Showing that the DRRP is Substantively Unconscionable

Assuming, *arguendo*, that Plaintiff could provide procedural unconscionability, Plaintiff's Opposition fails as to substantive unconscionability: showing the one-sidedness of the contract's terms. *D.R. Horton*, 120 Nev. at 554. Plaintiff bases his substantively unconscionable argument on contending that the 2014 DRRP provides CarMax the right to modify, waives class actions, and it contains a confidentiality provision. However, the 2022 DRRP is applicable and these arguments fail.

#### a. CarMax's Right to Modify The DRRP is Not Unconscionable

Plaintiff argues that CarMax's right to modify the DRRP is unconscionable. This exact argument was rejected in *Cohn v. Ritz Transp., Inc.*, No. 2014 WL 1577295, *15 (D. Nev. Apr. 17, 2014). In *Cohn*, the Court held that the plaintiff could not point to a single provision in the agreement which applied solely to one party or that gives a one-sided advantage to the employer. *Id.* To the contrary, the Court held that under the agreement, the arbitrator was mutually selected, either party can demand arbitration, both parties have the right to conduct discovery, and both parties consent to the disclosure of the content of any arbitration. *Id.* The same is true here. (ECF No. 6-4, 2022 DRRP, Rules 1, 5, 8, 9(g).) The Court further held that even though the agreement can be modified at the sole discretion of the employer, the right to alter the terms of the arbitration agreement is limited by the covenant of good faith and fair dealing implied in every contract. *Id.*; citing *Serpa v. California Sur. Investigations, Inc.,* 215 Cal.App.4th 695 (Apr. 26, 2013) (finding

arbitration provision was not substantively unconscionable, thus enforceable, even thought the agreement authorized employer to alter the terms of the agreement); *NFL*, 2024 WL 2178990 *16. The implied covenant of good faith and fair dealing prevents one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. *Id.* Interestingly, Plaintiff admits that the right to modify is not unconscionable based on this very basis. (ECF No. 14, p. 8:1-7 "Rule 13[5] is only permissible because CarMax's implied warranty of good faith and fair dealing prevents them from using Rule 13 contrary to the intention of the agreement [.]") CarMax's right to modify the DRRP does not render it unconscionable.

### b. The Class Action Waiver is Not Unconscionable

Plaintiff's argument that the class action waiver constitutes substantive unconscionability is without merit. Here, the class action waiver provision in the 2022 DRRP is labeled as "INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER," not "Parties" which Plaintiff took issue with in the 2014 DRRP. Accordingly, there is no hidden agenda by CarMax, and any alleged shortcomings identified by Plaintiff in the 2014 DRRP were dutifully corrected by CarMax in its later versions. Further, his argument is barred by *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 131 S.Ct. 1740 (2011). *Concepcion* forecloses any argument that a class action waiver is unconscionable or that an arbitration agreement is unconscionable because it contains a class action waiver. *Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017); *Tallman v. Eighth Jud. Dist. Ct.,* 359 P.3d 113, 122 (Nev. 2015) ("*Concepcion* teaches that the FAA protects class waivers in arbitration agreements, even when requiring individual arbitration hampers effective vindication of statutory claims.").

Plaintiff's reliance on the Norris-LaGuardia Act is misplaced. The Norris-LaGuardia Act is specific to protected activity in relation to unionization and primarily focuses on limiting the court's power to issue injunctions against labor unions in labor disputes.[6] This has no relevance.

---

[5] Plaintiff cites to the 2014 DRRP. The applicable provision is Rule 20 in the 2022 DRRP. (ECF No. 6-4, 2022 DRRP.)

[6] *See* 75 Cong. Rec. 4502 (1932): ""This is the first time in the history of the United States that an attempt has been made to declare, through an act of Congress, the public policy of the United States **in relation to the issuing of injunctions in labor controversies**. The object of setting up such a policy is to assist the courts in the proper interpretation of the proposed legislation..." (*Id.*.)

c.  **The Confidentiality Provision is Not Unconscionable**

Plaintiff's argument that the confidentiality clause in Rule 9(f) of the 2014 DRRP is unconscionable because it creates a "repeat player" advantage for CarMax has been repeatedly rejected. In *Hernandez*, the plaintiff made the same argument and cited to the exact same case law: *Ting v. AT&T,* 319 F.3d 1126 (9th Cir. 2003). *Hernandez*, 94 F. Supp. 3d at 1120. The court in *Hernandez* analyzed the confidentiality clause in relation to *Ting* and found that it did not render the DRRP substantively unconscionable. Plaintiff also relies on *Sanchez*. However, *Sanchez* found there was "nothing unreasonable or prejudicial" about the confidentiality clause and further found it was not unconscionable. *Sanchez*, 224 Cal. App. 4th at 408 ("The second provision requiring confidentiality is not unconscionable. In regard to 'the fairness or desirability of a secrecy provision with respect to the parties themselves, ... we see nothing unreasonable or prejudicial about it,' and it is not substantively unconscionable). Similarly, in *Herrera,* the court found that the confidentially clause in the DRRP was not substantively unconscionable. *Herrera,* 2014 WL 3398363, *9. The court reasoned that the Ninth Circuit has already determined that the risk of repeat-player advantage does not render unenforceable an arbitration agreement containing a confidentiality clause." *Id.,* *9-10; *citing Sanchez,* 224 Cal.App.4th at 408; *Kilgore v. KeyBank Nat'l Ass'n,* 718 F.3d 1052, 1059 n. 9 (9th Cir.2013) ("In any event, the enforceability of the confidentiality clause is a matter distinct from the enforceability of the arbitration clause in general. Plaintiffs are free to argue during arbitration that the confidentiality clause is not enforceable."). This Court should find the same.

d.  **The Implied Covenant Of Good Faith And Fair Dealing Has Not Been Contravened.**

Plaintiff repeats throughout his Opposition that CarMax has a duty of good faith and fair dealing in deploying their dispute resolution agreement. CarMax has met that duty. *See Casas* 224 Cal. App. 4th 1233 (finding that CarMax did not breach the duty of good faith and fair dealing).

The courts have well established the benefits of arbitration, acknowledging that "the costliness and delays of litigation [ ] can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable." *Dean Witter Reynolds Inc. v. Byrd*, 470

U.S. 213, 220 (1985)(*citing* H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)). Plaintiff highlights the benefit and purpose of the DRA: fair, private, expeditious, economical, final, and less burdensome or adversarial than court litigation. Benefits of confidentiality are mutual and apply to both parties. Both have interests in keeping information private, including potentially embarrassing or harmful information about Plaintiff. Likewise, there is nothing contained in the DRA or DRRP that in any way contravenes the NLRA. The U.S. Supreme Court is explicitly clear that class and collection waivers are completely acceptable and are not impinged by the NLRA. *See Epic*, 584 U.S. at 525 (finding, after extensive discussion and review of the legislative history of the NLRA, FLSA, and FAA, that class and collection waivers are enforceable in arbitration agreements).

Despite Plaintiff's statements to the contrary, the implied covenant of good faith and fair dealing does not require a party to contract to their own detriment, as this covenant is one directed at the performance of the contract and not a responsibility that exists for either party when negotiating and deciding on terms to a contract. *Hilton Hotels Corp. v. Butch Lewis Prods.*, 107 Nev. 226 (1991) ("When one party **performs** a contract and the justified expectations of the other party **are thus denied**, damages may be awarded against the party who does not act in good faith." (emphasis added)). The expectation that CarMax's contract terms that are in direct conflict with their interests is naïve and at odds with the purposes and functions of the implied covenant of good faith and fair dealing.

Additionally, the implied covenant of good faith and fair dealing is not grounds for rescission of an agreement, but rather an underlying principle related to performance of all contracts, for which damages may be pursued upon its breach. *See State DOT v. Eighth Judicial Dist. Court of Nev.*, 133 Nev. 549 (2017) ("Even if a defendant does not breach the express terms of a contract, a plaintiff may still be able to recover damages for breach of the implied covenant of good faith and fair dealing.").

### C.  The FLSA'S Purpose Does Not Override The FAA'S Mandate

Plaintiff misinterprets *Luchini* as creating a new standard by which to overcome enforcement of arbitration agreements: a demonstration of legislative intent. This "new standard" (found in a referential quote to another case and not speaking directly to the matter in *Luchini*)

simply does not exist and is not the holding in *Luchini* or any other case. "The FLSA does not override the strong FAA policy to enforce arbitration agreements." *Luchini v. CarMax, Inc.*, 2012 WL 3862150, *16. Regardless of Plaintiff's desire for the FAA to be interpreted to confer a non-waivable right to class and collective actions, the breadth of caselaw stands for the opposite: neither the FLSA nor the NLRA pre-empt the FAA in allowing for the waiver of class action claims. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 525, (2018). In fact, the United States Supreme Court has been explicit: "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms- including terms providing for individualized proceedings." (*Id.,* 502). Likewise, "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." (*Id.*, 509).

Though Plaintiff consistently argues that arbitration is a lesser, "inferior forum"; this, however, is a biased perception of arbitration and overlooks the intent underlying the FAA. Arbitration is not a lesser form of dispute resolution and the FAA is explicit in its position. *Luchini v. CarMax, Inc.*, 2012 WL 3862150, *5 ("An agreement to arbitrate in itself does not forgo substantive rights afforded by statute."). Plaintiff's argument is in direct contradiction with the legislative history of the FAA. *U.S. Home Corp.*, 134 Nev. at 191 ("[G]iving up procedural rights provided by other laws is a defining feature and primary characteristic of arbitration. The FAA protects arbitration agreements from invalidation on the grounds that they trade the procedural protections litigation affords for the more streamlined process arbitration provides." (internal citation omitted.) Additionally, the FAA and UAA allow for such waivers "because arbitration provides a quicker and less costly means for settling disputes." *(Id.)*

Finally, even if this Court agreed that arbitration is an inferior form of dispute resolution, it is not the responsibility of the court system to make policy determinations. "The respective merits of class action and private arbitration as means of enforcing the law are questions constitutionally entrusted not to the courts to decide but to the policymakers in the political branches where those questions remain hotly contested." *Epic*, 584 U.S. at 524 ("Congress has instructed that arbitration agreements like those before us must be enforced as written.") Thus, regardless of the FLSA's

purpose or how others may interpret it, this Court should enforce the arbitration agreement as it is valid and enforceable under the FLSA, FAA, and all other relevant and applicable law.

### D. CarMax's Attorneys' Fees Should Be Awarded

CarMax gave Plaintiff multiple opportunities to provide *any authority* supporting his refusal to agree to arbitration. Instead of providing any justification, Plaintiff's counsel snidely responded, "***I am sure an august employer's firm like yours is well aware of the turning tide with respect to arbitration agreements***." Upon further requests for more information, Plaintiff's counsel never provided further explanation as to their tenuous position.

It is now clear why Plaintiff provided no justification for their refusal. There is none. Plaintiff merely cites to secondary sources and deliberately misconstrues case law to support their refusal. Plaintiff's counsel has yet to provide any support this Court can rely upon to deny CarMax's Motion. Plaintiff's Opposition relies on unsubstantiated, unpersuasive, meritless, and frivolous argument and they should be sanctioned.

Plaintiff's argument that sanctions cannot be awarded for filing an initial complaint is meritless in this particular instance. CarMax is not seeking attorney's fees because of the filing of the complaint. Rather, it is the vexatious and unreasonable conduct demonstrated by Plaintiff's counsel *after* the initial filing which has motivated CarMax's request for attorneys' fees (*See* 28 U.S.C. § 1927: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct); *Schutts v. Bently*, 966 F. Supp. 1549, 1559 ("Section 1927 applies only to unnecessary filings and tactics *once a lawsuit has begun*: it is only possible to 'multiply' a proceeding after the complaint is filed."). It is Plaintiff's refusal to stipulate to arbitration or even discuss their underlying justifications for non-enforcement that have led to the filing of the Motion as well as this Reply, and thus the "multiplying" of proceedings related to this case.

### III. CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court grant its Motion to

- 12 -


Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and Award Defendant's Attorney's Fees/Costs.

DATED this 7th day of February, 2025.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Noel M. Hernandez*
Anthony L. Martin
Nevada Bar No. 8177
Noel M. Hernandez
Nevada Bar No. 13893
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800
Fax: 702.369.6888

*Attorneys for Defendant CarMax Auto Superstores, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the foregoing **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, STAY PROCEEDINGS PENDING ARBITRATION, AND AWARD DEFENDANT'S ATTORNEY'S FEES/COSTS** to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing, to the following registrant:

    Jason Kuller
    Rachel Mariner

Pursuant to NRCP 5(b), I hereby further certify that service of the foregoing was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

Jason Kuller
Rachel Mariner
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89128

*Attorneys for Plaintiff*

DATED this 7th day of February, 2025.

                                                */s/ Vincent M. Risucci*
                                                AN EMPLOYEE OF OGLETREE, DEAKINS,
                                                NASH, SMOAK & STEWART, P.C.