UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RUBEN MAYA,<br><br>     Plaintiff,<br>vs.<br>CARMAX AUTO SUPERSTARS, INC.,<br><br>     Defendant. | Case No.: 2:24-cv-02388-GMN-NJK<br><br>**ORDER GRANTING, IN PART,<br>MOTION TO COMPEL ARBITRATION** |

  Pending before the Court is the Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and Award Defendant's Attorney's Fees/Costs, (ECF No. 6), filed by Defendant CarMax Auto Superstores, Inc. Plaintiff Ruben Maya filed a Response, (ECF No. 14), to which Defendant replied, (ECF No. 16).

  For the reasons discussed below, the Court **GRANTS, in part, and DENIES, in part**, the Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and Award Defendant's Attorney's Fees/Costs.

**I. BACKGROUND**

  In 2016, Plaintiff applied for a job with Defendant. (Maya Decl. ¶ 2, Ex. B to Resp., ECF No. 14-2). After which, Defendant asked Plaintiff to come to one of its facilities for an interview, a tour, and to sign documents to be considered for the job. (*Id.* ¶ 3–4). Among those documents was the Dispute Resolution Agreement ("DRA"), which Plaintiff signed. (*Id.* ¶14); (*see* Plaintiff's Employment Application at 6, Ex. A-3 to Mot. Compel, ECF No. 6-5). The DRA states in relevant part: "Included with this application is the CarMax Dispute Resolution Rules and Procedures [("DRRP")]. You should familiarize yourself with these rules and procedures prior to signing the Agreement. If the Rules and Procedures are not included with this application you must request a copy from a CarMax representative prior to signing the

Agreement." (Plaintiff's Employment Application at 6, Ex. A-3 to Mot. Compel). The DRA also provided in bold text: "The [DRA] and [DRPP] affect your legal rights. By consenting to this Agreement, you acknowledge receipt of the [DRPP]. You may wish to seek legal advice before consenting to this [DRA]." (*Id*. at 2).

Defendant hired Plaintiff and Plaintiff worked for Defendant until 2023 when he was terminated. (First Am. Compl. ¶ 24, ECF No. 1-4). Plaintiff commenced the present lawsuit arising out of his termination. Defendant now moves for an order compelling arbitration, staying the case until arbitration concludes, and awarding attorney's fees to Defendant. (*See generally* Mot. Compel, ECF No. 6).

## II. <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of written arbitration agreements, including agreements arising from most employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 119 (2001). Section 2 of the FAA provides that:

> A written provision in. . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (alteration in original). Thus, the Court's "role under the [FAA] is. . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). In answering these questions, the Court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

### III. DISCUSSION

Defendant filed the Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and Award Defendant's Attorney's Fees/Costs, arguing that the DRA is a valid and enforceable instrument that requires Plaintiff to arbitrate all claims arising out of his employment with Defendant. As such, Defendant asserts that the case should be stayed, and Defendant should be awarded attorney's fees. (*See generally* Mot. Compel). Plaintiff opposes the motion, asserting that the DRRP, mentioned in the DRA, is unenforceable and

unconscionable.¹ (Resp. 1:20–23). Plaintiff also opposes a stay and awarding Defendant attorney's fees. (*See generally id.*). The Court first discusses whether arbitration should be compelled.

### A. Arbitration

The Court's "role under the [FAA] is. . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee*, 737 F.3d at 1261. The Court begins by addressing whether a valid arbitration agreement exists.

#### 1. Validity of Arbitration Agreement

The Court must first determine whether a valid agreement to arbitrate exists. *See Lee*, 737 F.3d at 1261. Defendant claims that Plaintiff signed a valid agreement to arbitrate when he signed the DRA, which incorporates the DRRP, while engaging in its hiring process. (*See* Mot. Compel 4:9–11). Plaintiff, however, challenges the validity of the DRRP referenced in the DRA.²

##### a. Formation

In evaluating the validity of the DRA and DRRP, the Court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1995). In Nevada, an agreement constitutes an enforceable contract where there is "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Defendant bears the burden of proving the existence of a

---

[1] Plaintiff also argues that the Fair Labor Standards Act overrides the FAA's mandate compelling arbitration. (Resp. 21:5). Plaintiff is incorrect. "The FLSA does not override the strong FAA policy to enforce arbitration agreements." *Luchini v. CarMax, Inc.*, 2012 WL 3862150, *16 (E.D. Cal. Sept. 5, 2012) (collecting cases).
[2] Plaintiff's Response references portions of the 2014 DRRP; however, Defendant states that it modified and replaced the 2014 DRRP and implemented a new DRRP dated December 31, 2022. (Reply 2:8–10, ECF No. 16). For purposes of this Order, it is immaterial whether the 2014 or 2022 DRRP applies. The substance of the DRRP that Plaintiff takes issue with is substantially similar between the 2014 and 2022 DRRP. Moreover, for the reasons discussed below, the Court need not determine whether the DRRP is substantively unconscionable which further supports the Court's decision to not make a finding regarding which DRRP is applicable.

valid arbitration agreement by a preponderance of the evidence. *Bridge Fund Capital Corp.*, 622 F.3d at 1005.

Here, Defendant submits a complete copy of the DRA signed by Plaintiff. (Plaintiff's Employment Application at 6–7, Ex. A-3 to Mot. Compel).  The DRA that bears Plaintiff's signature states: "Included with this application is the CarMax [DRRP].  You should familiarize yourself with these rules and procedures prior to signing the Agreement.  If the Rules and Procedures are not included with this application you must request a copy from a CarMax representative prior to signing the Agreement." (*Id.* at 6).  Moreover, Plaintiff signed under the DRA's bold text specifically acknowledging that he had received the DRRP. (*Id.* at 7).  Plaintiff admits that he signed the DRA while being considered for the job, but contends he never saw the DRRP until litigation commenced. (Resp. 4:2–3).  Plaintiff argues that the DRA cannot include the DRRP—and therefore cannot include a class and collective action waiver— because he did not receive the DRRP from Defendant and thus, there was no meeting of the minds to include the DRRP. (*Id.* 4:6–9).  But when a document is incorporated into a contract by reference, it is as though its terms are set forth in the contract and both are interpreted as a single document. 11 Williston on Contracts § 30:25 (4th ed. 2012); *Lincoln Welding Works, Inc. v. Ramirez*, 647 P.2d 381, 383 (Nev. 1982).  Moreover, a party's failure to read a contract before signing it is not a defense to contract formation. *See Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.").  Thus, the Court finds that Plaintiff signed the DRA, which incorporated by reference the DRRP, regardless of whether Plaintiff actually read or how quickly he read it. This is true because, by signing the DRA, Plaintiff acknowledged his employment claims were subject to the DRA and DRRP.  Accordingly, the record supports a finding that the DRA, which includes the DRRP by reference, was an offer made in consideration of employment that

was validly accepted by Plaintiff. *See Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, 996 P.2d 903, 907 (Nev. 2000) (upholding an employment arbitration agreement as an enforceable contract in Nevada). Despite this, however, Plaintiff maintains the DRRP is invalid because it is unconscionable, and thus, unenforceable.[3]

### b. Unconscionability

In evaluating Plaintiff's unconscionability argument, applicable state law governs. *First Options of Chicago*, 514 U.S. at 944. Nevada possesses a strong public policy in favor of arbitration, and arbitration clauses are generally enforceable. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1168 (Nev. 2010), *overruled on other grounds by U.S. Home Corp. v. M. Ballesteros Tr.*, 415 P.3d 32, 42 (Nev. 2018). "Nevertheless, courts may invalidate unconscionable arbitration provisions." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), *overruled on other grounds by U.S. Home Corp.*, 415 P.3d at 42; *see also Burch v. Second Judicial Dist. Court of State ex rel. Washoe*, 49 P.3d 647, 650 (Nev. 2002). "A contract is unconscionable only when the clauses of that contract and the circumstances existing at the time of the execution of the contract are so one-sided as to oppress or unfairly surprise an innocent party." *Bill Stremmel Motors, Inc., v. IDS Leasing Corp.*, 418, 514 P.2d 654, 657 (Nev. 1973). "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp.*, 415 P.3d at 40 (citing *Burch*, 49 P.3d at 650). Thus, the Court first addresses the issue of procedural unconscionability.

Plaintiff contends that the DRRP is procedurally unconscionable. (Resp. 12:21–22). "A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract."

---

[3] Plaintiff does not argue that the DRA is unconscionable, only the DRRP. (*See generally* Resp.).

*FQ Men's Club, Inc. v. Doe Dancers I*, 471 P.3d 753, at *2 (Nev. 2020).  Plaintiff argues that the atmosphere in which he signed the DRA incorporating the DRRP was chaotic, he had little time to read the DRA, the 2014 DRRP would have been difficult to read because it is illegible, the signature lines on the DRA were not near the provisions he was giving up, nothing warned him about what he was giving up, and he was not aided by an attorney when he signed the DRA. (Resp. 14:14–15:23).  Plaintiff states that he drove to Defendant from his current job and back during his lunch break. (*Id.* 5:24–25).  During that time Plaintiff toured Defendant's facility for about 20 minutes and then signed paperwork, including the DRA, for 10 minutes. (*Id.* 6:1–2).  Nothing in the record indicates, and Plaintiff does not contend, that he was forced to sign the paperwork in only 10 minutes.  In fact, the DRA provides that a signee may "take the package with [them] and return with it signed, if [they] wish to continue with the application process," and also grants a signee three days to withdraw their consent after signing the DRA. (Plaintiff's Employment Application at 6, Ex. A-3 to Mot. Compel).  The Court is unpersuaded by Plaintiff's arguments that the environment was chaotic and he had little time to read the DRA which incorporated the DRRP.  Additionally, the 2014 DRRP submitted by Plaintiff, while blurry, is not unintelligible. (*See* 2014 DRRP, Ex. E to Resp., ECF No. 14-2).

As for Plaintiff's argument that the signature lines on the DRA were not near the provisions he was giving up and he was not warned about what he was giving up, it is true that arbitration agreements may be unconscionable when a party signs the first page of the agreement and the arbitration clauses follow, meaning nothing drew attention to the arbitration provision. *D.R. Horton*, 96 P.3d at 1164.  But here, Plaintiff's signature was on the bottom of the last page of the DRA, not the first, and he was repeatedly warned in the DRA to review the DRRP because it affects his legal rights.  Moreover, Plaintiff's argument that he was not aided by an attorney while signing the DRA is unpersuasive because the DRA explicitly warns: "You may wish to seek legal advice before consenting to this [DRA]." (Plaintiff's Employment

Application at 7, Ex. A-3 to Mot. Compel). Thus, the Court finds that the DRA and DRRP are not procedurally unconscionable. Because the Court finds that the DRA and DRRP are not procedurally unconscionable, it need not consider whether they are substantively unconscionable. *U.S. Home Corp.*, 415 P.3d at 40.

### 2. The Disputes at Issue are Encompassed by the Agreement

If satisfied that a valid arbitration agreement exists, the FAA then limits courts to determining whether the agreement encompasses the disputes at issue. *See Lee*, 737 F.3d at 1261. "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

Here, Plaintiff does not address whether the DRA and DRRP encompasses the disputes at issue. (*See generally* Resp.). Nevertheless, the Court finds that the plain language of the DRA and DRRP does encompass the disputes at issue. The DRA, which incorporates the DRRP by reference, expressly states that it covers "disputes, or controversies arising out of or relating to my application or candidacy for employment and employment and/or cessation of employment with [Defendant], exclusively by final and binding arbitration before a neutral Arbitrator." (Plaintiff's Employment Application at 6, Ex. A-3 to Mot. Compel). In the instant case, Plaintiff's claims are: (1) Failure to Pay Overtime in Violation of NRS 608.018; (2) Breach of Contract – Failure to Pay Accrued Unused Vacation Time; (3) Failure to Timely Pay All Wages Due at Termination in Violation of NRS 608.020; and (4) Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207. These claims arise out of or relate to Plaintiff's employment and/or cessation of employment with Defendant. As a result, the Court finds that

the DRA and DRRP encompasses the disputes at issue. Thus, the Court GRANTS Defendant's Motion as it relates to compelling arbitration.

### B. Stay Pending Arbitration

Defendant next argues that the Court should impose a stay pending arbitration proceedings. (Mot. Compel 9:13–14). Plaintiff opposes Defendant's motion to stay. (Resp. at n. 28). Upon finding that a claim is subject to arbitration, and pursuant to 9 U.S.C. § 3, the Court has authority to grant a stay pending arbitration. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Not only does the Court have the authority to stay the case, but case law provides courts *should* stay or dismiss the claims subject to arbitration. *Nagrampa*, 469 F.3d at 1276–77. As discussed above, the Court finds that a valid agreement to arbitrate exists and that the disputes at issue are encompassed within the DRA and DRRP. Accordingly, the Court GRANTS a stay pending arbitration proceedings because this case is subject to arbitration.

### C. Attorney's Fees

Defendant lastly moves for an award of attorney's fees under 28 U.S.C. § 1927, arguing that Plaintiff's conduct in refusing to arbitrate was vexatious. (Mot. Compel 11:12). 28 U.S.C. § 1927 provides: "Any attorney. . . admitted to conduct cases in any court of the United States. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A district court may award attorney's fees if it finds that the losing party acted in bad faith, vexatiously, or for oppressive reasons. *International Union of Petroleum & Indus. Workers v. Western Industrial Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). "[An] award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration. . . ." *United Food & Commercial Workers Union, Locals 197 v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984).

Defendant argues that Plaintiff acted in bad faith because he refused to stipulate to arbitration despite being required to do so under the DRA and DRRP. (Mot. Compel 11:21–25). Although Plaintiff's position did not prevail, Defendant fails to meet is burden of establishing that Plaintiff's conduct was frivolous enough to warrant the sanction it seeks. Thus, Defendant's request for attorney's fees is DENIED.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and Award Defendant's Attorney's Fees/Costs, (ECF No. 6) is **GRANTED, in part, and DENIED, in part**. Defendant's request to compel arbitration and stay this case pending arbitration proceedings is granted. Defendant's request for attorney's fees is denied.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending arbitration proceedings. The parties shall file a Joint Status Report apprising the Court of the status of the arbitration proceedings every 90 days, beginning on December 15, 2025.

**DATED** this __12__ day of September, 2025.

_____
Gloria M. Navarro, Chief Judge
United States District Court